Jack C. STOLLER, Appellant,

v.

John O. MARSH, Jr., Secretary of the Army.

No. 81–1721.

United States Court of Appeals, District of Columbia Circuit.

Argued March 24, 1982.

Decided June 22, 1982.

Roy Tesler, Washington, D. C., for appellant.

Alice Patricia Frohman, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, and Kenneth M. Raisler, Royce C. Lamberth and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. Scott T. Kragie, Asst. U. S. Atty., Washington, D. C., entered an appearance for appellee.

Before WRIGHT and EDWARDS, Circuit Judges, and BAZELON, Senior Circuit Judge.

**J. SKELLY WRIGHT, Circuit Judge:**

In this Title VII action the District Court granted summary judgment in favor of defendant Marsh, Secretary of the Army, on each of plaintiff Stoller's four claims. We affirm the District Court's judgment on Stoller's first three claims, based on separate personnel actions in 1968, 1969, and 1971, because the court lacked subject matter jurisdiction over these pre-1972 actions by the federal government. Summary judgment was improper, however, on Stoller's fourth claim, arising from the Army's failure to promote him in 1972. Genuine issues of material fact remain unresolved and the government was not entitled to judgment as a matter of law. An unfavorable employment decision resulting from inaccurate, discriminatorily-motivated evaluations by the employee's supervisors violates Title VII, unless the employee previously had a reasonable opportunity to inspect the personnel file and have the evaluations corrected. We therefore reverse and remand for further proceedings on the 1972 claim.

I

From March 1967 to April 1968, Jack Stoller served in Saigon, Republic of Vietnam, as a civilian personnel management specialist (GS–11) in the Department of the Army. He asserts that during his period of service in Vietnam he suffered harassment and unequal treatment but did not then realize that these episodes were anti-Semitic. In 1968, after one year in Vietnam, Stoller was reassigned to the United States, although he desired to remain overseas in order to obtain higher pay and benefits. He contends that he was entitled to a five-year tour of overseas duty, but that his superiors arranged for his transfer for discriminatory reasons. Stoller's superiors reported that he was unable to work harmoniously with Vietnamese people. Joint Ap-

pendix (JA) 27. Stoller asserts that this report was false.

In January 1969 Stoller applied for overseas employment within the Department of the Army. His application was denied. In 1971 the Career Screening Panel reviewed Stoller's record, along with the records of more than 800 other civilian personnel, and placed him in a deferred category on the ground that he was ineligible for promotion. Stoller was informed of this decision in May 1972. He did not file any administrative charges of discrimination after the 1968 reassignment, the 1969 denial of overseas employment, or the 1971 Career Screening Panel decision.[1]

Subsequently the 1972 Career Screening Panel placed Stoller in the promotable category for positions in his field of specialty. The panel did not, however, recommend him for promotion. Within 30 days after he was informed of the panel's decision in May 1973, Stoller initiated administrative proceedings under Title VII. He sought redress not only for the 1972 screening panel's decision but also for the three pre-1972 personnel actions.

The administrative proceedings continued from 1973 to 1978. After a lengthy investigation, the Civil Service Commission complaints examiner found that, although there was an "atmosphere of discrimination" during Stoller's period of service in Vietnam, the Army had not discriminated against him in violation of Title VII. That decision was affirmed by the Appeals Review Board in May 1978. Stoller filed this lawsuit in the District Court within 30 days after the review board's decision.

Stoller alleged that the Army had violated Title VII by discriminating against him on the basis of his "religion (Jewish) and national origin (semite)[.]" His complaint asserted that the Army "has discriminated and is continuing to discriminate against the Plaintiff in each of the following ways": (1) the 1968 refusal to allow him to "complete his normal tour in Vietnam"; (2) the denial of his application in 1969 for another overseas assignment; (3) the 1971 panel's decision that he was ineligible for promotion; and (4) the 1972 panel's restriction of his promotional opportunities. Complaint at 3. In opposition to the government's motion to dismiss, he contended that these four actions formed part of a pattern of "continuing discrimination" which began in Vietnam in 1968. He alleged that his Army superiors in Saigon, motivated by religious discrimination, improperly arranged for his reassignment to the United States after one year of duty and that, to justify this action, they manufactured a personnel file falsely asserting that he was unable to get along with Vietnamese people. This "secret file," he asserts, caused the subsequent adverse decisions in 1969, 1971, and 1972.

The District Court granted summary judgment for the government on all of Stoller's claims. With respect to the first three government actions, the court held that Stoller had failed to file timely administrative claims, even though the record showed that he was aware of the alleged discrimination. In the alternative the court held that it lacked jurisdiction over claims against the federal government based on acts prior to the effective date of the 1972 amendments to Title VII. JA 13–14. The District Court also held that the 1972 screening panel's decision did not violate Title VII. In the court's view, Stoller was not complaining of a "present violation" by the 1972 panel; rather he was asserting that the panel failed to promote him "because of his past employment history." Relying on *United Air Lines v. Evans*, 431

1. Even before Title VII was amended in 1972 to apply to federal government employees, the government provided administrative remedies for discrimination on the basis of race, color, religion, sex, and national origin. Under Executive Order No. 11375, 32 Fed.Reg. 14303 (1967), federal agencies and departments were required to provide procedures for investigating and deciding discrimination complaints by employees. *See* 5 C.F.R. §§ 713.211–.236 (1970) (requiring agencies to establish equal employment opportunity programs including counseling, investigation, and hearing of complaints, with appellate review by Civil Service Commission).

U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), it concluded that Stoller could not prevail on his fourth claim. JA 14–16.

## II

### A. *Pre-1972 Government Actions*

The District Court granted summary judgment for the government on Stoller's three pre-1972 claims on the ground that he had failed to pursue administrative remedies in a timely manner. Stoller conceded that, until 1973, he did not file administrative charges regarding any of the pre-1972 government actions—reassignment to the United States in 1968, denial in 1969 of his application to work overseas, and placement by the 1971 screening panel in a deferred category. He claimed, however, that until May 1973 he did not suspect that his previous treatment had resulted from religious discrimination, and that the investigation uncovered episodes of discrimination of which he had not been aware. Statement of Points and Authorities in Opposition to Defendant's Motion to Dismiss at 4, 6–7 (hereinafter Opposition to Motion to Dismiss). Therefore, he maintains, the time limits were subject to equitable tolling.

■ Under Title VII, if an employee did not at the time know or have reason to know that an employment decision was discriminatory in nature, the time limits for filing an administrative complaint may be tolled.[2] *See Cooper v. Bell*, 628 F.2d 1208, 1212 (9th Cir. 1980); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 474 (D.C.Cir. 1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975). But in this case the District Court concluded that "the record demonstrates that the plaintiff was aware of the alleged discriminatory acts and could have filed timely claims. Thus, any argument that the time to file was tolled is also without merit." JA 14. We need not decide whether, at the summary judgment

stage, the District Court properly concluded that there was no genuine issue of material fact about Stoller's knowledge of the alleged discrimination against him. We affirm the District Court's dismissal of the pre-1972 claims on jurisdictional grounds.

■ The 1972 amendments to Title VII, extending the statute's coverage to federal government employees, do not apply retroactively to discrimination prior to March 24, 1972, with the exception of two categories of cases. *Brown v. Turner*, 659 F.2d 1199, 1202 (D.C.Cir.1981). Pre-1972 claims against the federal government are covered if a complaint was pending on the effective date of the Act, *Grubbs v. Butz*, 514 F.2d 1323, 1327 (D.C.Cir.1975); *Womack v. Lynn*, 504 F.2d 267 (D.C.Cir.1974), or if a continuing violation began before that date but extended after it, *Thompson v. Sawyer*, 678 F.2d 257, 289 (D.C.Cir.1982); *Bethel v. Jefferson*, 589 F.2d 631, 636–637 (D.C.Cir.1978). Under these settled principles, the District Court lacked subject matter jurisdiction over Stoller's first three claims.

On March 24, 1972 no administrative proceedings were pending with regard to any claims of discrimination brought by Stoller. His complaint in the District Court alleged in a conclusory fashion that the Department of the Army "has discriminated and is continuing to discriminate against the Plaintiff" and recited the government's actions in 1968, 1969, 1971, and 1972. Subsequently Stoller's memorandum in opposition to the government's motion to dismiss attempted to set forth a theory of continuing violation. He contends that, to cover up the allegedly discriminatory and procedurally irregular decision to reassign him to the United States after one year in Vietnam, his superiors created a "secret file" which was subsequently used by the Army to deny him an overseas assignment in 1969, promotable status in 1971, and a promotion in 1972. Opposition to Motion to Dismiss at 3–4, 10–13; *see* appellant's brief at 29. We

---

**2.** The Supreme Court recently held that filing a timely charge of discrimination with the Equal Employment Opportunity Commission is not a jurisdictional prerequisite to suit, but a require- ment that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

conclude that these allegations, even if proven, would not establish a "continuing violation" of Title VII; they do not adequately link four separate episodes of alleged discrimination into a single, continuous policy.[3]

Stoller's reassignment from Vietnam in 1968 is separate and distinct, for Title VII purposes, from the placement of allegedly false papers into his personnel file. *Cf. Shehadeh v. Chesapeake & Potomac Tel. Co.*, 595 F.2d 711, 718–719, 723 (D.C.Cir. 1978) (although charges regarding 1968 discharge would have been untimely, allegations of subsequent discriminatory references by former employer were timely because "sufficiently distinct" from the original termination).

▮ The subsequent decisions in 1969, 1971, and 1972 did not *ipso facto* become part of a "continuing violation" because Stoller alleged that they were based on the same personnel file. This court has found a continuing violation when an employer followed a systematic discriminatory policy with respect to a class of employees,[4] when an employer allegedly engaged in a persistent practice of issuing false, discriminatory references to prospective employers of a former employee,[5] and when a preliminary decision made before 1972 became final after that date.[6] But a series of allegedly discriminatory actions against the same employee, even with the same alleged motive such as sex discrimination, is not enough. *See Milton v. Weinberger*, 645 F.2d 1070, 1072 n.3, 1077 (D.C.Cir.1981) (no "continuing violation" when female plaintiffs unsuccessfully applied on six occasions between 1972 and 1977 for position as GS–14 Equal

Employment Opportunity Officer); *Klapac v. McCormick*, 640 F.2d 1361, 1366 (D.C.Cir. 1981) (even though complaint also alleged a post-1972 violation, Title VII did not cover refusal to admit plaintiff to training programs between 1964 and 1966, denial of on-the-job supervisory training from 1966 to 1971, and rejection for promotion in 1971).

In the words of the court in *Milton v. Weinberger, supra*, 645 F.2d at 1076, appellant has not adequately alleged that the pre- and post-1972 acts by the government "constituted continuing discrimination, pervasive bias, or unlawful employment policies, thus entitling [him] to relief from the time limits in the Code of Federal Regulations. * * * [T]he appellan[t] seek[s] relief not from an unlawful program of discrimination, but from specific, perhaps unrelated instances of it." For this reason the pre-1972 claims are beyond the coverage of Title VII; we affirm the District Court's grant of summary judgment.

### B. The 1972 Career Screening Panel

In 1972 the Career Screening Panel reviewed Stoller's record, placed him in the promotable category for positions in his field of specialty, but failed to recommend him for promotion. Stoller alleges that the panel thereby restricted his promotional opportunities and discriminated against him on the basis of religion and national origin. In deposition he conceded that he had no evidence that the 1972 Career Screening Panel members were consciously motivated by religious discrimination; indeed, he had no evidence that the panel members knew

---

3. Even if a complaint refers to a "continuing violation," the court lacks subject matter jurisdiction over pre-1972 claims unless the facts alleged would constitute continuing discrimination if proven. *See Myles v. Schlesinger*, 436 F.Supp. 8, 14 (E.D.Pa.1977).

4. *See Thompson v. Sawyer*, 678 F.2d 257, 282, 285, 289 (D.C.Cir.1982) (job classifications, restrictions on training); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 473 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (unequal pay, inferior ac-

commodations, and other inequalities in benefits and requirements).

5. *Shehadeh v. Chesapeake & Potomac Tel. Co.*, 595 F.2d 711, 719, 725 (D.C.Cir.1978) (plaintiff alleged a "long-lasting pattern of like events," possibly as many as 200 discriminatory reports by the same group of personnel).

6. *Bethel v. Jefferson*, 589 F.2d 631, 636 (D.C. Cir.1978) ("not an assortment of unrelated happenings, but a chain of connected events").

that he was Jewish. JA 59–60.[7] Nevertheless he argued that Title VII had been violated because the panel's decision was based on false and discriminatory evaluations previously prepared by his supervisors and placed in his file.

The District Court granted summary judgment on this claim in favor of the government. It reasoned that Stoller was not complaining of a "present" violation by the 1972 panel; "rather, he complains that a neutral 1972 CSP [Career Screening Panel] would not have failed to promote him but for employment problems resulting from illegal religious or national origin discrimination which occurred in Vietnam in 1968 and 1969." JA 15. Relying on the Supreme Court's decision in *United Air Lines v. Evans, supra,* 431 U.S. at 558, 97 S.Ct. at 1889, the court concluded that the "present effects of past discrimination" did not constitute a violation of Title VII.

In our view the District Court erred in its characterization of Stoller's argument. Stoller's claim was not based on the "present effects of past discrimination" within the meaning of *Evans.* Rather, he claimed that the 1972 screening panel violated Title VII by relying on false evaluations prepared and placed in his file by supervisors discriminating against him on grounds of his religion and national origin. Title VII is violated when an employing organization uses discriminatory evaluations of an employee which were prepared by its own supervisory personnel, unless its procedures have given the employee a reasonable opportunity to inspect and correct these evaluations. Therefore the government was not entitled to judgment as a matter of law; we reverse summary judgment on Stoller's fourth claim and remand to the District Court for further proceedings.[8]

### 1. *Decisions based on discriminatory evaluations*

The broad language of Title VII is designed to "implement the pervasive congressional objective of 'equality of employment opportunities.'" *Shehadeh v. Chesapeake & Potomac Tel. Co., supra,* 595 F.2d at 721. An employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1976). This case requires us to interpret this statutory command in the context of institutional decisionmaking.

Stoller's claim arises out of a bifurcated decisionmaking process. His supervisors in Vietnam prepared evaluations for his personnel file which, according to Stoller, were falsified for discriminatory reasons. The Career Screening Panel assertedly relied on these unfavorable evaluations without knowing of the supervisors' discriminatory animus. The government contends that the resulting decision not to promote Stoller was lawful—even if the evaluations were both false and discriminatory—because the screening panel's members did not intend to discriminate against him. In effect it asserts that the motives of the supervisors were irrelevant because of the division of labor between the supervisors and the screening panel, even though both acted in their official capacities within the same government department. This issue was expressly left unresolved by the court in

---

7. *See* Stoller Deposition at 118–119, 177–178; Plaintiff's Supplemental Answers to Defendant's First Set of Requests for Admissions #129, #134.

8. The government moved to dismiss Stoller's fourth contention for failure to state a claim, or in the alternative for summary judgment. It contended that Title VII would be violated only if the ultimate decisionmakers acted with "discriminatory animus." Government's Reply Memorandum in Support of Motion to Dismiss at 8. The parties agreed that the 1972 panel did not deliberately discriminate against Stoller.

In accordance with Rule 12(b) the court treated the motion as one for summary judgment, because it considered matters outside the pleadings including Stoller's admissions and deposition. Because we hold that the grounds for dismissal asserted by the government were insufficient, we must reverse the District Court's grant of summary judgment.

*Shehadeh v. Chesapeake & Potomac Tel. Co., supra,* 595 F.2d at 720 n.43:

> The extent to which an employer may rely upon the discriminatorily-contrived personnel records of an employee no longer working for the employer, or one still engaged and presumably able to correct the falsified file, is a substantial question that we need not now address. * * *

Stoller's fourth claim squarely raises the issue for decision.

The government's restrictive view of Title VII is inconsistent with the broad remedial policies of the statute in an age of bureaucratic decisions. Under Title VII no "employer" may discriminate against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1976). If the "employer" is an organization, a finding of discrimination or nondiscrimination depends on motives, actions, and procedures in all parts of the organization which played a causative role in the challenged employment decision.[9]

When a supervisor, acting in his official capacity, deliberately places an inaccurate, discriminatory evaluation into an employee's file, he intends to cause harm to the employee. As this court has recognized in another context, "An unfavorable employee assessment, placed in a personnel file to be reviewed in connection with future decisions concerning pay and promotion, could both prejudice the employee's superiors and materially diminish his chances for advancement." *Smith v. Secretary of the Navy,* 659 F.2d 1113, 1120 (D.C.Cir.1981); *see President v. Vance,* 627 F.2d 353, 361 (D.C.Cir.1980) (in determining scope of administrative complaint, "it is impossible to conceive of an inferior performance evaluation as other than a detriment to promotion"). If these reasonably anticipated consequences actually occur before the employee has had a fair chance to examine and correct the file, the employer—that is, the

organization as a whole—cannot escape Title VII liability simply because the final decisionmaker was not personally motivated by discrimination. *See Mangiapane v. Adams,* 661 F.2d 1388, 1390 n.14 (D.C.Cir.1981) (even though a claim based on discriminatory performance evaluations was not before the court, evidence of evaluations may be admissible "as an indication of motivation behind the asserted denials of promotion").

In *Stephenson v. Simon,* 427 F.Supp. 467, 472–473 (D.D.C.1976), the District Court found that plaintiff's rights had been violated when another of the four "best qualified" candidates was selected for promotion. A discriminatorily low evaluation by her supervisor, which greatly reduced her overall point rating, had severely prejudiced her opportunity for promotion. The court did not determine whether the selecting officer was biased, or whether he knew that the supervisory rating was discriminatorily motivated. It was enough that the applicants' point totals were "substantially, if not entirely, determinative" in the selection. Similarly, in *Copeland v. Secretary of Labor,* 414 F.Supp. 647, 652 (D.D.C.1976), there was a clear indication that plaintiff's supervisor would have selected her for a particular promotion if she had been certified as eligible. The court found that she failed certification because of "unfair and incomplete evaluations that, in substantial part, reflected * * * sex bias * * *." Therefore it held that plaintiff was entitled to relief under Title VII. *Cf. MacRae v. McCormick,* 458 F.Supp. 970, 974–975 (D.D.C.1978) (opinion assumes that failure to promote based on a discriminatory evaluation by plaintiff's supervisor would violate Title VII, but finds no discrimination by supervisor); *Rakestraw v. U. S. Penitentiary,* 24 FEP 1316, 1319–1322 (N.D.Ga.1980) (government conceded that performance evaluation was discriminatory; plaintiff lost because he failed to prove that, in

---

9. As this section explains, the motives underlying supervisory evaluations must be considered in determining whether a subsequent employment decision is discriminatory. If the employer provides procedures for employees to in-

spect and correct their supervisory evaluations, however, the employees' rights are sufficiently protected and the employer may subsequently rely in good faith on the evaluations without Title VII liability. *See* Part II–B–3 *infra.*

selection processes involving promotion boards and selecting officials, he would have been promoted if the evaluation had been fair).

2. *Inapplicability of* United Air Lines v. Evans

■ When an employee alleges that he has been denied promotion because of a discriminatory evaluation, the timeliness and cognizability of the administrative complaint are measured by the date the employee learned of the promotion decision. It does not matter when the evaluation was prepared—before or during the filing period, before or after the effective date of Title VII. The discriminatory action of which the employee complains is the failure to promote, *see* Part II–B–1 *supra*; the supervisor's alleged discriminatory animus is background information which might make the decision discriminatory.

This analysis shows that *United Air Lines v. Evans, supra*, relied upon by the District Court, is inapposite. *Evans* held that an employer did not violate Title VII by giving seniority credit only for continuous service, even if the employee's career was interrupted in the past by a discriminatory policy for which the employee did not seek timely relief. A stewardess had been discharged because the airline had a policy of terminating stewardesses when they married. In subsequent litigation brought by other plaintiffs, the policy was declared illegal under Title VII. The plaintiff was rehired, but the airline refused to give her seniority credit for any period before the date she was rehired. The Supreme Court rejected her claim that the airline was presently violating Title VII. In its view the seniority system operated neutrally, even though it gave present effect to a past act of discrimination. Under the circumstances the airline's previous discharge of the plaintiff was

> the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

431 U.S. at 558, 97 S.Ct. at 1889.

*Evans* stands for the proposition that, in a neutral decisionmaking process, an employer may lawfully take account of objective facts in an individual's past employment record. These facts—such as the number of years of continuous service, *see Evans, supra*; specialized training, *see Klapac v. McCormick, supra*, 640 F.2d at 1366; or necessary job-related experience, *see Myles v. Schlesinger*, 436 F.Supp. 8, 15 (E.D. Pa.1977)—cannot be erased or modified immediately, even if they resulted from prior unchallenged acts of discrimination. In some employment decisions they may play a legitimate role. Lack of training may disqualify an employee for a higher position; discontinuities in service may affect the quality or nature of an employee's work. *See* Case Comment, *Past Discrimination and Present Violations of Title VII*: Farris v. Board of Education, 92 HARV.L.REV. 757, 766 (1979).

But Stoller's fourth claim differs materially from the contention rejected in *Evans*. He alleges that the 1972 screening panel's decision was based not on objective facts in his past employment history, but on subjective and allegedly false supervisory evaluations. If these evaluations were indeed false and discriminatory, then Stoller was denied a fair chance to be evaluated on his own merits by the 1972 Career Screening Panel. The alleged discriminatory animus of his supervisors in Vietnam is "relevant background evidence" in a proceeding challenging the lawfulness of the 1972 decision. *See* 431 U.S. at 558.

As the District Court wrote in *Myles v. Schlesinger, supra*, 436 F.Supp. at 15 n.7, *Evans* should be distinguished from

> the case where a plaintiff charges that s/he was denied a promotion because an old discriminatory evaluation was used in the current employment decision. The new direct use of the evaluation gives it fresh significance and should be treated as a new and independent act of discrimi-

nation. * * * [A] new use of an old biased evaluation would not be racially neutral. The evaluation would not be an objective, nondiscriminatory criterion as would be length of service or lack of job experience.

The District Court implicitly accepted this analysis of the *Evans* principle in *MacRae v. McCormick, supra*, 458 F.Supp. at 974–975. When MacRae applied for a promotion in September 1973, his supervisor submitted an evaluation. Although MacRae was not selected for the job, he did not file a charge of discrimination. In April 1974 he applied for another job opening. The promotion panel used the evaluation prepared by his supervisor in September 1973; again MacRae did not receive the promotion. This time he filed a timely administrative complaint. The court noted that the first denial of a promotion was not before the court, but added that the September 1973 evaluation—time-barred in its own right—"may be probative of the claim now before the Court" as background evidence, citing *Evans. Id.* at 974 n.1. Similarly, in Stoller's case the allegedly discriminatory evaluations are relevant to his claim based on the 1972 Career Screening Panel's decision, even though they were prepared in 1968, before the passage of the 1972 amendments and outside of the 30-day filing period.[10]

3. *Prior opportunity to inspect and correct the file*

■ Thus, even if a period of time separates an allegedly discriminatory evaluation and the resulting unfavorable employment decision, the motive behind the evaluation may be considered in a challenge to the subsequent decision. Otherwise an organization could separate illegal motive from decisionmaking responsibility, contrary to the principle that Title VII applies to the employer as an *organization. See* Part II–B–1 *supra*. But this principle has a corollary: after preparation of employee evaluations, the employing organization may protect itself from Title VII liability by establishing procedures to allow employees to screen their personnel files and to remove damaging, discriminatory information. The ultimate decisionmaker cannot personally investigate every factual assertion in an applicant's file. Inevitably he or she must rely on the assertions and judgments of others within the organization. If established procedures have given an employee a reasonable opportunity to inspect the supervisory evaluations in his or her file, to challenge allegedly inaccurate materials, and to have such materials corrected or removed,[11] and if the organization gives its employees adequate notice that these rights may be exercised,[12] then it may rely in good faith on such evaluations in making subsequent employment decisions without violating Title VII.

For federal government employees, the procedures mandated by the Privacy Act—which became effective on September 27,

---

**10.** In *Delaware State College v. Ricks*, 449 U.S. 250, 258–259, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980), the Supreme Court stressed that "'the proper focus [in determining timeliness of filing] is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful.'" Quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979) (emphasis added by the *Ricks* Court). In *Ricks* a college professor was denied tenure but received a one-year terminal contract; the Court held that the filing limitations period commenced when the tenure decision was made, even though plaintiff did not lose his teaching position until later. In this case, in contrast, although preparation of the evaluation may have been a discriminatory act, the 1972 screening panel's decision is al-

leged to have been an unlawful discriminatory act in its own right. *See* Part II–B–1 *supra*.

**11.** These procedures need not form part of an equal employment opportunity program; general procedures for disclosure of employee appraisals, coupled with grievance procedures for correcting inaccurate files, might be sufficient. As long as an employee has the chance to examine and correct his supervisory evaluations, he may be expected to challenge those he believes to be discriminatory.

**12.** The government has the burden of producing evidence on this question, because it has much greater access to information about its personnel procedures, but the plaintiff retains the ultimate burden of persuasion.

1975—satisfy these criteria.[13] Under the Act and accompanying regulations, an employee has a right of access to his personnel records. 5 U.S.C. § 552a(d)(1) (1976); 5 C.F.R. § 297.203(a) (1982).[14] Upon the employee's request, the agency must either make any correction of any portion of the record which he believes is "not accurate, relevant, timely, or complete," or give reasons for its refusal. 5 U.S.C. § 552a(d)(2) (1976); see C.F.R. §§ 297.306(d), 297.307 (1982). The agency must provide procedures for administrative review of its refusal within 30 days, 5 U.S.C. § 552a(d)(3) (1976); 5 C.F.R. § 297.308 (1982), and a final adverse agency determination is judicially reviewable. 5 U.S.C. § 552a(g)(1)(A) (1976). In addition, the regulations provide that agencies, at least annually, must announce by a notice that reaches all employees that the Privacy Act gives them the right of access to their personnel records. 5 C.F.R. § 297.409 (1982).

Stoller's fourth claim, however, is based on a decision by the federal government in 1972, before the effective date of the Privacy Act. On the present record we are unable to determine whether the Department of the Army's procedures between 1968 and 1972 in fact gave Stoller an adequate opportunity to inspect and correct his supervisory evaluations. Stoller stated in deposition that in June 1969 an Army personnel officer told him that "I didn't get along with Vietnamese, according to the reports from Vietnam." Stoller deposition at 113–115.[15]

Civil Service Commission regulations in effect in 1969, applicable to the Department of the Army, gave employees a right to inspect their official personnel folders, 5 C.F.R. § 294.703(a) (1970); Federal Personnel Manual § 294 at 294–17 to 294–18 (1969); see 32 C.F.R. § 518.3(g)(9) (1970) (Department of Army regulations referring to Federal Personnel Manual disclosure requirements). The contents of these folders included unsatisfactory performance ratings and other disciplinary documents. Federal Personnel Manual Supplement 293–31 at 293–A–3, 293–A–4 (revised July 1969). It is not clear, however, whether the Department of the Army's grievance procedures permitted employees to challenge and correct supervisory evaluations. See Federal Personnel Manual § 771 at 771–3 to 771–12 (revised July 1969) (general guidelines for agency grievance procedures). It also does not appear whether the Army gave employees adequate notice of their rights under existing regulations.

Stoller asserts that, although he asked to examine the supervisory reports from Vietnam, his request was denied, Opposition to Motion to Dismiss at 3, in violation of Civil Service Commission and Department of the Army regulations, Plaintiff's First Set of Requests for Admissions #25. The government, on the other hand, denies this allegation. Defendant's Answers to Plaintiff's First Set of Requests for Admissions #25, #35.[16] This disputed issue of fact

---

**13.** If such procedures have not been established by an agency or are being systematically flouted, however, the agency may not rely on the Privacy Act to insulate itself from Title VII liability for using supervisory evaluations in employment decisions.

**14.** In addition, recently enacted legislation requires each agency to establish performance appraisal systems in accordance with Office of Personnel Management regulations. 5 U.S.C. § 4302(b) (Supp. IV 1980). OPM requires that periodic appraisals shall be in writing and shall be provided to the employee; they shall be used to "provide employees with information on their performance and how it may be improved." 5 C.F.R. § 430.203(g), (i)(1) (1982); see Federal Personnel Manual § 430 at 430–3, 430 -A-1 to 430–A–3, 430–A–10 (1980).

**15.** Stoller's memorandum in opposition to the government's motion to dismiss stated that, when he applied unsuccessfully for overseas employment in 1969, he "was made aware, by defendant's employees, that there was something in writing to the effect that plaintiff was unable to get along with foreign nationals." Opposition to Motion to Dismiss at 3.

**16.** Stoller also alleges that the unfavorable information was included in a "secret" or unauthorized file. See Plaintiff's Answers to Defendant's First Set of Interrogatories # 21 at 3. Defendant denies that any unauthorized file existed; it contends that the Department of the Army files maintained in 1969 concerning plaintiff were those kept on all career employees. Defendant's Answers to Plaintiff's First Set of Interrogatories # 1 at 1.

may be considered by the District Court on remand. If the court finds that Stoller's request to examine his evaluations was denied, it should further determine whether Stoller had a right to appeal the denial and whether he received adequate notice of any such opportunity.

In summary, a number of unresolved issues of material fact await the District Court on remand. To show that the 1972 decision was in fact discriminatory, Stoller must prove that his supervisors in Vietnam prepared materially false or inaccurate evaluations, that they were motivated by illegal discriminatory reasons, and that these evaluations caused the Career Screening Panel's decision not to promote him in 1972. The government may come forward with evidence that under established procedures Stoller actually had the opportunity, before the 1972 panel deliberations, to inspect the allegedly discriminatory evaluations and to correct or remove them. Stoller bears the ultimate burden of proof.

### C. *Denial of Motion to Reconsider*

Finally, Stoller contends that the District Court erroneously denied his Rule 60(b) motion to reconsider the summary judgment ruling and to grant leave to amend his complaint to allege a new discrimination claim. After submission of the case to the District Court on motion in April 1980, in another suit the District Court held that "pervasive systemic defects" in the Army's promotion procedures had resulted in unlawful discrimination against employees of the Office of Employment Policy and Grievance Review (OEPGR), who were responsible for enforcing Title VII. *Clark v. Alexander*, 489 F.Supp. 1236 (D.D.C.1980), *aff'd in part and remanded in part on other grounds*, 665 F.2d 1168 (D.C.Cir.1981). Stoller, an OEPGR employee during the period covered by *Clark*, sought to amend his complaint to include an allegation that the Army had discriminated against him as a member of the OEPGR staff. He had not previously pursued administrative remedies for this claim.

The District Court properly denied Stoller's motion. The findings in *Clark* regarding discrimination against OEPGR staff are not relevant to the issues of religious and national origin discrimination before the court in this case. A Rule 60(b) motion for reconsideration is not a vehicle for introducing entirely new claims into an action. In addition, Stoller has not demonstrated that evidence of discrimination against him because of his OEPGR status was unavailable to him before the entry of judgment by the District Court.

### III

For the reasons stated, we affirm the District Court's grant of summary judgment for the government on Stoller's three claims arising out of pre-1972 personnel decisions, and its denial of Stoller's post-judgment motion for reconsideration. We reverse summary judgment with respect to Stoller's fourth claim—the denial of promotion in 1972—and remand for further proceedings in accordance with this opinion.

*So ordered.*