**Linwood Jerome FOSTER,
Jr., Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER
CORPORATION, et al., Defendants.**

**Civ. A. No. 83–2702.**

United States District Court,
District of Columbia.

June 4, 1985.

Matthew S. Watson, Washington, D.C., for plaintiff.

Christopher M. Klein and Theodore M. Kerrine, Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

On October 16, 1973, the National Railroad Passenger Corporation ("Amtrak") hired the plaintiff as a station passenger service representative. Due to a reduction-in-force, plaintiff was removed from that position on June 30, 1974. Plaintiff later filed a complaint with the Baltimore Community Relations Commission ("Baltimore Commission"), alleging race discrimination.

The race discrimination charge was settled on March 30, 1976, when Amtrak and the Baltimore Commission entered into a Memorandum of Understanding ("Memorandum"). The Memorandum provided that plaintiff would be promoted to the position, pay and benefits of Station Supervisor, effective November 10, 1975. *See* Defendants' Motion for Summary Judgment, Exhibit A. The plaintiff accepted the terms of this Memorandum on July 4, 1976. *See* Defendants' Exhibit B. The Equal Employment Opportunity Commission ("EEOC") later reviewed the Memorandum and concluded that the matter had been successfully settled. *See* Defendants' Exhibit C.

On September 5, 1977, plaintiff's Station Supervisor position was abolished in another reduction-in-force. Plaintiff alleges that he and other employees slated to be removed met with Edward Blair, a supervisor, on or about September 5, 1977. Blair allegedly told them that they could continue their employment with Amtrak if they "bumped" other, less senior employees in union positions. According to plaintiff, Blair also promised that those who stayed with Amtrak would automatically be considered for future management positions. Plaintiff claims that he relied on this representation and bumped into a union position, becoming a timekeeper in Baltimore.

Plaintiff alleges that Amtrak breached Blair's oral promise in February 1978, when Thomas Rao, an employee with less seniority than plaintiff, was placed in a management position. Plaintiff alleges that Rao, who is a member of a racial minority,[1] was appointed before plaintiff

---

1. Deposition of Linwood J. Foster (Foster Deposition) at 69; Defendants' Statement of Material

because of race discrimination. Plaintiff also implies that other, white employees were selected ahead of him, but does not dispute that Rao's appointment triggered the breach of contract claim.

Plaintiff eventually filed a discrimination complaint with the EEOC. On February 24, 1983, the EEOC concluded that no reasonable cause existed to credit plaintiff's claim of race discrimination and issued a Notice of Right to Sue. Defendants' Exhibit D. Plaintiff then brought this action *pro se*, alleging breach of the 1976 Memorandum, breach of an asserted 1977 oral contract, and employment discrimination.[2] This action is now before the Court on defendants' motion for summary judgment.

By Memorandum and Order of April 24, 1985, the Court scheduled oral argument and an evidentiary hearing on defendants' motion for summary judgment. The purpose of the hearing was to resolve the apparent factual dispute about what Mr. Blair said to the plaintiff and other employees at the meeting that took place on or about September 5, 1977. *See Foster v. National Railroad Passenger Corporation*, No. 83–2702 slip op. at 2 (D.D.C. April 24, 1985).

### I.

Plaintiff alleges that the defendants breached the 1976 Memorandum and a 1977 oral contract that was allegedly created by plaintiff's reliance on Mr. Blair's promises. He seeks damages for breach of contract and for alleged violations of 42 U.S.C. § 1981. The testimony adduced at the evidentiary hearing establishes that Amtrak undertook a reduction-in-force because of budget cutbacks, that Mr. Blair met with the employees who were to be removed in the reduction-in-force, and that he advised them that Amtrak would try to restore them to their management positions. Mr.

Payne, plaintiff's witness, added that he understood that those removed would be brought back automatically, without having to reapply or watch for postings announcing the availability of new management positions.

However, the plaintiff offered no evidence to prove that Amtrak had entered into a contract guaranteeing that plaintiff's seniority would entitle him to be reappointed to a management position as soon as one became available. First, the testimony of Jean Hughes and Al Bellow established that there is no such thing as seniority for a management position. Rather, as Mr. Blair explained, experience—which is measured by job performance rather than time in the position—is the primary criterion for promotion to a management level job.

Second, plaintiff failed to prove that Mr. Blair made a promise upon which the plaintiff reasonably relied to his detriment. The testimony establishes only that Mr. Blair told the removed employees that they would remain on the payroll until the end of September 1977. During that time, they could either try to find another management job at Amtrak or they could exercise their seniority rights to move into a union position. The testimony of those present at the meeting proves that Mr. Blair did not promise to reappoint those employees who remained with Amtrak instead of going elsewhere.

 The testimony of defendants' witnesses was credible, consistent and essentially uncontradicted by the testimony of plaintiff's witness. Considering the testimony as a whole, the Court finds that no contract was formed in September of 1977 because there was no bargained for exchange between the purported parties to the contract. In the course of breaking the

Facts as to Which There is No Genuine Issue at ¶ 14.

**2.** Plaintiff retained counsel after commencing this action. He has already conceded that he has no claim under 42 U.S.C. § 1985. *See* Memorandum of Points and Authorities in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment at 5–6. He has also abandoned his claims under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments. *See Foster v. National Railroad Passenger Corp.*, No. 83–2702, slip op. at 1 n.* (D.D.C. February 23, 1984).

news of the reduction-in-force to those concerned, Mr. Blair stated his personal intention to assist the removed employees in obtaining management positions with Amtrak. Mr. Blair apparently failed to keep his word after the affected employees were removed. Nevertheless, there is absolutely no evidence that Amtrak promised to reappoint the plaintiff provided that he did not take a job with someone else. *See also* Foster Deposition at 156–57. There is, in short, no reason to believe that a contract was formed.

■ Plaintiff also alleges a separate contract claim arising out of the asserted breach of the 1976 Memorandum. The plaintiff cannot state a claim based on the Memorandum because that agreement was fully performed long before this action was brought. The Memorandum required only that plaintiff be appointed to the position of Station Supervisor and that he receive pay and benefits appropriate to that position retroactive to November 10, 1975. There is no dispute that these obligations were carried out. *See* Foster Deposition at 8, 17 & 67. Indeed, the plaintiff approved the Memorandum in July of 1976. *See* Defendants' Exhibit B. Neither the Memorandum nor plaintiff's approval of it suggest the presence of an implied term binding Amtrak to keep plaintiff employed as a Station Supervisor even though all of the other employees who held that position were to be removed. The Memorandum made plaintiff a Station Supervisor, and it conferred on him the pay and benefits that he would have received had he been appointed to that position on November 10, 1975. Amtrak did not employ plaintiff in a special job that was to be insulated from legitimate reductions-in-force. Similarly, nothing in the Memorandum obligated Amtrak to restore plaintiff to a management position once he had been removed from his job as a Station Supervisor.

■ Moreover, the plaintiff's contract claims are time barred. Contract claims against Amtrak are governed by the laws of the District of Columbia. *See* 45 U.S.C. § 546(d). D.C.Code § 12–301(7) requires

that contract actions be brought within three years of an alleged breach. Plaintiff asserts that the 1976 Memorandum and the alleged 1977 oral contract were breached when Thomas Rao was appointed to a management position in 1978. Defendants' Statement of Material Facts as to Which There is No Genuine Issue at ¶ 12; Foster Deposition at 12. At best, plaintiff's contract claim arose in May of 1978, when Jean Hughes was allegedly selected for a management position. Complaint at ¶ 9. Nevertheless, plaintiff did not file this suit until 1983, five years after the alleged breach.

In response to the defendants' motion for summary judgment, the plaintiff "claims that he is prepared to show that breaches of the 1976 agreement have occurred as late as 1984." Memorandum of Points and Authorities at 3. This proffer plainly fails to "to set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e). The plaintiff has never moved to amend his complaint, nor does he offer the slightest explanation of the incidents to which he refers. The defendants should not be put to the expense of a trial when the plaintiff fails to allege facts sufficient to make out a claim that falls within the statute of limitations.

■ Similarly, plaintiff's section 1981 claim is barred by the one year limitation period applicable to actions brought under the District of Columbia's Human Rights Law. *See Parker v. Baltimore and Ohio Railroad Company*, 555 F.Supp. 1182, 1187 (D.D.C.1983). The only incidents of discriminatory breach of contract sufficiently pleaded by plaintiff are the 1978 appointments of Thomas Rao and Jean Hughes. These incidents occurred five years before the complaint was filed and cannot save the plaintiff's claims from the applicable statute of limitations.

Plaintiff argues that the statute of limitations does not apply because the 1978 appointment was only the first in a series of discriminatory breaches of contract that have continued through 1984. However, the plaintiff has failed to allege with speci-

ficity any incidents occurring within the limitations period. Moreover, the plaintiff has completely failed to allege that there is any connection between the original incident of alleged discrimination and more recent occurrences. As our Court of Appeals has observed, "a series of allegedly discriminatory actions against the same employee, even with the same alleged motive such as sex discrimination, is not enough." *Stoller v. Marsh*, 682 F.2d 971, 975 (D.C.Cir.1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983).

## II.

Plaintiff also alleges that he was removed from his Station Supervisor position and not reappointed to management because of race discrimination. He seeks relief from this alleged discrimination under Title VII. There is no dispute that in 1977, Amtrak had to abolish several positions because of cutbacks in its budget. Defendants' Statement of Material Facts as to Which There is No Genuine Issue at ¶ 9; Plaintiff's Response to Defendants' Motion for Summary Judgment at 2. Plaintiff theorizes, however, "that the decision to eliminate his post was motivated by illegal considerations of race." Plaintiff's Response at 2.

■ But the plaintiff has conceded that his position was abolished because of reductions in Amtrak's funding. *See* Complaint at ¶ 7; Foster Deposition at 10. The defendants emphasized this apparent concession in their motion for summary judgment, *see* Memorandum of Points and Authorities at 11–12, but plaintiff has never offered to clarify his position on the point. Assuming that plaintiff could make out a *prima facie* case of race discrimination, the undisputed facts establish that Amtrak had a legitimate, nondiscriminatory reason for abolishing plaintiff's Station Supervisor position. Plaintiff's conclusory assertions and the allegations in his complaint do not give rise to a factual issue on this point, *see* Fed.R.Civ.P. 56(e), nor do they sufficiently allege that Amtrak's reason for removal was a mere pretext for race discrimination. To the contrary, the undisputed facts establish that both whites and blacks, in roughly equal numbers, were removed from positions comparable to plaintiff's during the reduction-in-force. Defendants' Statement of Material Facts as to Which There Is No Genuine Issue at ¶ 10; *Foster, supra,* slip op. at 1–2.

■ Plaintiff also alleges "racial discrimination regarding his failure to receive certain promotions on the basis of seniority." Memorandum of Points and Authorities at 1. Plaintiff's argument on this point is based on the assumption that seniority entitles him to a management post. But the testimony adduced at the evidentiary hearing convincingly established that seniority does not control selection for management positions. In any event, the allegations in plaintiff's complaint and the pleadings on the motion for summary judgment are wholly conclusory. The plaintiff has obtained counsel since the filing of his *pro se* complaint and has had the benefit of discovery. Nevertheless, he has failed to allege with specificity or proffer evidence about *any* occasion on which he was denied a management position because of race discrimination. Accordingly, he has failed to state a claim under Title VII.

For these reasons, an order will grant the defendants' motion for summary judgment and dismiss the complaint.