Michael FUENTES, Plaintiff,

v.

**CITY OF NEW YORK HUMAN RE-
SOURCES ADMINISTRATION,**
Defendant.

No. 91 Civ. 5576 (VLB).

United States District Court,
S.D. New York.

Sept. 13, 1993.

Michael H. Sussman, Goshen, NY, for plaintiff.

Sergio J. Tuero, Asst. Corp. Counsel, Law Department, City of New York, New York City, for defendant.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

This employment discrimination case brought pursuant to Title VII of the Civil

Rights of 1964, as amended (42 U.S.C. § 2000e et seq.) and 42 U.S.C. § 1981, involves claims by a Special Security Officer of the New York City Human Resources Administration (the "agency") working at its LaGuardia homeless shelter, that he was denied a promotion because of Hispanic national origin.

Plaintiff was a candidate for promotion to Senior Special Officer ("sergeant") in 1986 and 1987 but was not promoted. Four other employees were promoted at that time, but had longer service than plaintiff and according to the agency were more qualified. No direct evidence of hostile animus has been presented. In 1984, 16% of the officers at the LaGuardia location were Hispanic; no argument appears to be made by plaintiff that significant statistical evidence of discrimination exists.

The key question with respect to the merits is whether or not the agency has shown "legitimate, non-discriminatory reasons" for its actions, and if so, whether there is a genuine issue of material fact with respect to whether or not those reasons are merely pretextual. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Board of Trustees of Keene College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978); *Lieberman v. Gant*, 630 F.2d 60, 65–66 (2d Cir.1980).

The agency has moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds (a) that the claims are time-barred, and (b) that there is no genuine issue of material fact with respect to the merits.

I grant the agency's motion to dismiss plaintiff's claims as time-barred with respect to claims under 42 U.S.C. § 1981, and also with respect to Title VII insofar as plaintiff seeks monetary relief for past events. I deny the agency's motion for summary judgment with respect to the surviving portion of plaintiff's case, relating to injunctive relief and attorney's fees.

**II**

The applicable limitations period with respect to Title VII requires that a charge be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the allegedly unlawful employment practice. 42 U.S.C. § 2000e–5(e). This limitation is not jurisdictional, and must be given an interpretation which will fulfill its purposes of barring stale claims, while not penalizing unintentional harmless error. See generally *Zipes v. TWA*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); authorities cited, *Wojik v. Postmaster General*, 814 F.Supp. 8 (S.D.N.Y.1993); Fed.R.Civ.P. 61. *Zipes* held that waiver, estoppel or tolling may avoid the time bar, but none of these grounds for avoidance has been established here.

Plaintiff filed his charge with the EEOC on August 18, 1989. The latest promotion prior to that was on September 12, 1988, more than 300 days earlier. Plaintiff claims that a discouraging conversation which took place after the latest promotion amounted to a subsequent violation. Such a conversation is not by itself an event upon which a claim for damages, or even for equitable relief, may be predicated. To permit a vague event of this type to avoid an otherwise applicable time bar would effectively defeat the purpose of the time limit. See generally *Sogluizzo v. Local 817, IBT*, 514 F.Supp. 277, 279 (S.D.N.Y.1981).

Plaintiff also argues that failure to promote is an ongoing violation, so long as the plaintiff is employed and eligible. See generally *Ass'n Against Discrimination v. City of Bridgeport*, 647 F.2d 256, 274–75 (2d Cir.1981); *Noble v. University of Rochester*, 535 F.2d 756 (2d Cir.1976); *Young v. Town of Fallsburg*, 774 F.Supp. 205, 208–09 (S.D.N.Y.1991).[1]

The ongoing conduct argument is inapplicable to plaintiff's claim for damages for separate, finite specific events in the past;

1. Pre-limitations period events may be considered as evidence so long as the claimed violation took place within the applicable limitations period, *Lodge 1424 v. NLRB*, 362 U.S. 411, 416, 80 S.Ct. 822, 826, 4 L.Ed.2d 832 (1960), just as post-violation events may be considered where relevant, *Eatz v. DME Unit of Local Union No 3*, 794 F.2d 29 (2d Cir.1986); *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir.1990).

otherwise stale monetary claims could survive for an indefinite period contrary to the purposes of the 300 day period established by the statute, which seeks early mediation and evaluation of such claims.

■ Ongoing illegal conduct may, however, be applicable to a claim for equitable relief against an allegedly continuing violation. Equitable relief concerning an ongoing situation does not have a chilling or punitive effect. Since in the case at bar the EEOC did hear the matter prior to the allegedly ongoing improper failure to promote, characterization of non-promotion as a continuing event is not inconsistent with the text and purposes of the statute and of the administrative filing deadline.

Where the continuing nature of an allegedly illegal employment practice is not obvious, specific notice to the EEOC and in the party's pleading is necessary. *Scott v. Federal Reserve Bank,* 704 F.Supp. 441, 450 (S.D.N.Y.1989). Where such notice is implicit in the facts alleged, as in the case of ongoing failure to promote, no formal recitation is necessary in light of Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

### III

■ Plaintiff argues that failure to articulate seniority as a formal standard for promotion makes it irrelevant. No rule of law bars informal criteria, so long as the actual criteria employed do not discriminate in invidious forbidden ways such as on the basis of national origin. Title VII does not require a paper trail for employment decisions. See *Watson v. Ft. Worth Bank & Trust Co,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); Mertens, "Watson v. Fort Worth Bank & Trust," 14 Employee Rel LJ No 2 at 163 (Fall 1988); Fasman, "Legal Obstacles to Alternative Workforce Designs," 8 Employee Rel LJ 256 (1982).[2]

■ Seniority is a widely recognized traditional device for rewarding experience and avoiding disputes attendant upon reliance on more subjective criteria for employment decisions; the longevity considered may be job-specific or entity-wide. See generally Whitney, "Pay Concepts for the 1990s, Pt I," 20 Comp & Benefits Rev 33, 36 (1988); US Bureau of Labor Statistics, "Union Agreement Provisions," 1942 Bulletin 686. Seniority has been statutorily recognized as a valid nondiscriminatory reason for employment decisions.[3] While the legal system does not affirmatively require that seniority be used as an employment relations decisionmaking factor, it is widely used, whether formally or not, as a way of avoiding controversial subjective decisionmaking. It is almost always stressed in collective and informal bargaining by both organized and unorganized labor as a counterbalance against fears of arbitrary favoritism by managers. Thus use of seniority as one factor in promotion decisions does not by itself tend to suggest invidious discrimination contrary to the applicable statutes. The Equal Pay Act, indeed, refers to seniority as an optional, permitted but not required, ground for employment decisions. See 29 U.S.C. § 206(d)(1)(i).

Documents submitted by plaintiff show a long-running and acrimonious controversy over ethnic division of the agency workforce. It is difficult to determine from the documents and other proof before me whether or not pressures generated in that controversy led to favoring one or another group. A number of difficult-to-interpret claims of hostility within the workforce are made by plaintiff, including an alleged threat of violence after plaintiff testified at a workers' compensation hearing; he complained about the failure of management to take action with that threat. Disputes in one form or another are common in large organization; litigation as

**2.** Where a policy, be it formal or informal, is "not ... consistently applied ... [but in a particular instance] invoked with a strictness ... that could only demonstrate some underlying motive," *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 269, 97 S.Ct. 555, 565, 50 L.Ed.2d 450 (1977), an adverse inference may be drawn.

**3.** Seniority is not necessarily the best criterion for selection of supervisors, and may have little or no correlation with ability to perform. See generally Fasman, "Legal Obstacles to Alternative Workforce Designs," 8 Employee Rel LJ 256 (1982).

an adjunct to such controversies is contrary to the spirit and purpose of anti-discrimination legislation unless invidious selection can be shown to have occurred.

The paucity of non-speculative evidence of discrimination argues strongly in favor of the agency's motion for summary judgment. See *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983). At the same time, evaluation of the credibility of the witnesses, including observation of their demeanor, may be crucial to determining the truth. See *United States v. Zafiro,* 945 F.2d 881 (7th Cir.1991), *aff'd on other issues* — U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

Deterrence of illegal discrimination, one of the chief objectives of Title VII, requires that invidious action lead to appropriate legal sanctions. The purposes of Title VII also require that fear of unjustified lawsuits not impair the neutrality of employing agency decisionmaking which is sought by the statute.[4]

■ Where as here, monetary damage claims are time-barred, the risk of chilling what may turn out on an all-facts-known basis to be legitimate neutral agency decisionmaking is minimized.[5] Not without difficulty, I conclude that summary judgment should be denied with respect to the injunctive claims which survive time limitations.

## IV

■ The limitations period applicable to claims under 42 U.S.C. § 1981 is ordinarily treated as three years. *Ingram v. Madison Square Garden,* 709 F.2d 807, 811 (2d Cir. 1983), *cert. denied* 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 313 (1983). This period is not tolled by filing an administrative complaint under Title VII. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Tuckett v. Police Dept. of the City of New York,* 708 F.Supp. 77 (S.D.N.Y.1989). Where money damages

are sought relating to a finite incident, prompt notice is critical to permit effective investigation and trial while memories are fresh. The complaint was filed on August 16, 1991, more than three years after the 1987 failure to promote, which is the sole basis asserted for seeking damages under § 1981. Equitable relief for an ongoing failure to promote may be another matter, but this need not be considered in regard to § 1981 since Title VII would provide effective relief.

## V

The parties are directed to revisit options for settlement of this case. The agency has made no contention that plaintiff is not qualified to be a sergeant, but rather solely that others who were promoted in the past were more qualified. The agency's papers indicate that plaintiff received a positive recommendation and at one point was placed above another officer with greater seniority on a list relevant to future promotion.

If settlement is not reached within 45 days of this memorandum order, or judicial assistance in connection with settlement negotiations requested by both parties, the parties will submit by that time the materials called for by Rule 7.2 of my Individual Rules of Practice with respect to bench trials.

SO ORDERED.

---

**4.** This concern is most strongly articulated where monetary damage suits against individual public sector supervisors are involved, which is not the situation here. See generally *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

**5.** The allowance of interlocutory appeals from denials of motions claiming qualified immunity as a matter of law does not apply to injunctive relief. See *Green v. Brantley,* 941 F.2d 1146 (11th Cir.1991) (en banc); Note, 87 Colum.L.Rev. 161 (1987); Schroeder, "Rights Against Risks," 86 Colum.L.Rev. 495 (1986).