**Willie Claud BROWN, Plaintiff,**

v.

**The CITY OF NEW YORK; Herman L. Jenkins as City Personnel Director of The Department of Personnel of the City of New York; Rudolph J. Rinaldi as Commissioner of The Department of Buildings of the City of New York; Betsy Gotbaum as Commissioner of The Department of Parks and Recreation of the City of New York; and Bernard H. Jackson as Chair of The New York City Civil Service Commission, Defendants.**

**No. 89 Civ. 0024 (SWK).**

United States District Court, S.D. New York.

Oct. 25, 1994.

Cleary, Gottlieb, Steen & Hamilton, New York City by Thomas J. Moloney, Stephanie Cotsirilos, Clive Sheldon, for plaintiff.

O. Peter Sherwood, Corp. Counsel of the City of New York by Bruce Rosenbaum, New York City, for defendants.

### *MEMORANDUM OPINION AND ORDER*

KRAM, District Judge.

In this employment discrimination action, defendants the City of New York (the "City"), Herman L. Jenkins as City Personnel Director of the Department of Personnel of the City of New York (the "DOP"), Ru-

---

1. Unless otherwise indicated, the following statement of facts is taken from Defendants' Local Rule 3G Statement, Plaintiff's Counter Statement Pursuant to Local Civil Rule 3(g), the Amended Complaint, the Affidavit of Thomas Carlsen, sworn to on September 29, 1993 (the "Carlsen Aff.") and Defendants' Responses and Objections to Plaintiff's First Set of Requests for Admissions.

2. A certificate of relief from disabilities relieves the holder of all disabilities and bars to employment, excluding the right to be eligible for public office. *See* Certificate of Relief from Disabilities, annexed to the Affidavit of Stephanie Cotsirilos, sworn to on December 23, 1993 (the "Cotsirilos Aff.") as Exh. "C."

---

dolph J. Rinaldi as Commissioner of the Department of Buildings of the City of New York (the "DOB"), Betsy Gotbaum as Commissioner of the Department of Parks and Recreation of the City of New York (the "DOPR") and Bernard H. Jackson as Chair of the New York City Civil Service Commission (the "Civil Service Commission") move for summary judgment, pursuant to Federal Rule of Civil Procedure 56(b). For the reasons set forth below, defendants' motion is granted in part and denied in part.

### BACKGROUND [1]

#### I. Employment as Apprentice Inspector (Construction)

In June 1984, plaintiff Willie Claud Brown ("Brown") applied for the position of apprentice inspector (construction) with the DOB, submitting to the DOP an application and a personal history form. In the personal history form, Brown disclosed that he had a previous criminal conviction, for which he had received a certificate of relief from disabilities.[2] Brown revealed further that he had been previously employed by Joseph Vitullo ("Vitullo") and explained that his employment had ceased due to a change in staff.[3] Brown also submitted a letter from the New York City Transit Authority ("Transit Authority") confirming his past employment there.[4]

On July 24, 1984, Brown was appointed to the position of apprentice inspector (construction) at the DOB. Upon appointment, Brown was assigned to the Building Enforcement Special Team squad (the "B.E.S.T. Squad"), located in Brooklyn, New York.

---

3. By letter dated July 2, 1985, however, Vitullo indicated to the DOP that Brown was terminated because he

was not qualified as a senior draftsman. I asked him to stay at a lower rate of pay commensurate with his ability. He agreed. He was let go because he would not take direction from my head draftsman, who was younger than him. I received complaints from the other employees concerning his attitude toward them. I fired him to keep peace in the office.

*See* letter from Vitullo to the DOP of 7/2/85, annexed to the Declaration of Bruce Rosenbaum, executed on December 3, 1993 (the "Rosenbaum Dec."), as Exh. "J."

4. Brown was terminated from the Transit Authority position as a result of his conviction.

When Brown commenced employment, he was the only male African–American apprentice inspector in the B.E.S.T. Squad.

As a routine matter, Brown was soon reassigned to the DOB's Manhattan Borough office. While participating in a training seminar in the Manhattan office, Brown alleges that director of training Frank Gallo ("Gallo") harassed him because of his race. Specifically, Brown alleges that Gallo treated him in a condescending fashion during class and publicly humiliated him. Gallo also gave Brown a poor performance evaluation even though Brown received high scores on all examinations administered in the training program.

As a result of this harassment, Brown requested and was soon granted reassignment back to the B.E.S.T. Squad in Brooklyn. Beginning in the latter part of 1984, Brown alleges that he was asked to perform more menial and burdensome tasks than similarly situated employees at the B.E.S.T. Squad. In addition, Brown's work was scrutinized more closely than that of his co-workers. Brown was often prevented from performing his duties and then falsely accused of failing to do his job.

On or about six months after commencing work with the DOB, Brown suffered several incidents of physical harassment, including being struck in the face and back and kicked in an injured leg. Brown alleges that he was also verbally harassed on a number of occasions. As a result of these incidents, on January 25, 1985, Brown filed a complaint with his supervisor, Chief Robert Van Alphen ("Van Alphen"). Brown alleges that, instead of addressing these incidents, Van Alphen instigated or tacitly encouraged the on-going harassment.

In January 1985, Van Alphen initiated sexual harassment and insubordination charges against Brown before the Inspector General ("IG") of the DOB. After an investigation, the charges were found to be unsubstantiated.

Subsequently, in February 1985, Brown filed a complaint with the IG alleging that he was the subject of hostility and discrimination in the workplace. On December 5, 1985, the IG found Brown's charges to be unsubstantiated. Specifically, the IG concluded:

> There is no doubt that most of these incidents happened but not in the context of Mr. Willie Brown's perception. These incidents were blown out of proportion on both sides of the continuum. Mr. Brown, Mr. Van Alphen, Mr. [William] Hobson and Mr. [Victor] Taranto exhibited poor judgment in dealing with these matters. During the interviews with the Chief, Asst. Chief and Supervisor of the Best Squad, I got the distinct impression that Management stood still and the problems increased to the point of a powder keg.... The only tangible fact that rises above all the aforementioned heresay [sic] fingerpointing is that a severe personality conflict exists between the Management of the Best Squad with Mr. Willie Brown.

*See* Report of the IG, dated December 5, 1985, annexed to the Cotsirilos Aff. as Exh. "K," at 2.

In January 1985, Brown requested a transfer from the B.E.S.T. Squad, but Van Alphen refused to grant the request. Accordingly, Brown made a second transfer request to Executive Chief Inspector Eugene Slattery. In addition, on June 25, 1985, Brown wrote a follow-up letter to the IG to expedite his request.

## II. The Performance Evaluations

In the interim, on June 12, 1985, Brown received a performance evaluation giving him an overall "unsatisfactory" rating at the B.E.S.T. Squad (the "June 12th Evaluation").[5] As a justification for the unsatisfactory rating, Brown's supervisor, Victor Taranto, ("Taranto") indicated that "Mr. Brown appears to have an inferiority complex or some such malady. He seems to be insecure in some way and acts defensive or almost

---

5. An unsatisfactory rating category was given where "[p]erformance did not meet one or more of the most critical standards; the employee's own lack of effort or of required skills, knowledge and abilities were responsible. Performance has been consistently at this level despite sufficient and adequate attempts by the supervisors to correct performance." *See* Department of Buildings—Employee Evaluation Form, annexed to the Cotsirilos Aff. as Exh. "G."

resentfully rebellious at times." *See* Department of Buildings—Employee Evaluation Form, annexed to the Cotsirilos Aff. as Exh. "G." The June 12th Evaluation did indicate, however, that Brown (1) had a fair familiarity with materials; (2) kept current with codes and ordinances; (3) assisted the inspector with research; (4) accurately transcribed technical information; (5) participated in classroom training; and (6) performed required assignments. *Id.* The June 12th Evaluation concluded that "[p]erhaps some form of counselling would be beneficial.... A change of location to another borough might help." *Id.*

That same day, Gallo wrote a memorandum to Chief Van Alphen indicating that:

Apprentice Inspector Willie Brown's Attitude in Classes is argumentative and disruptive. He does not grasp the point made in the lesson and always goes off on a tangent. I do not believe he would be able to carry out the duties of a Construction Inspector with this type of attitude.

*See* Departmental Memorandum from Gallo to Van Alphen of 6/12/85, annexed to the Cotsirilos Aff. as Exh. "G."

Twelve days later, on June 24, 1985, Brown received a second evaluation, signed by Taranto and Van Alphen, in which his performance again was rated as "unsatisfactory" and it was recommended that he be terminated from employment (the "June 24th Evaluation"). Specifically, the Evaluation indicated that Brown

has been warned about his lateness a number of times in the past. 2. Mr. Brown has on a number of occassions [sic] taken sick leave and has not notified this office in the required time period as per Department regulations. 3. A number of times he has refused to obey a direct order from a person or persons of supervisory status. 4. On a number of occassions [sic] Mr. Brown was to meet an Inspector in the field and has called the office stating that he could not find the inspector. Mr. Brown, going to the wrong location has most often been the cause of this situation. 5. He does hinder the Inspector in the course of his inspection by asking ques-

tions of the inspector while talking to people at job site.

*See* Department of Buildings—Employee Evaluation Form, annexed to the Cotsirilos Aff. as Exh. "H." Unlike the June 12th Evaluation, the June 24th Evaluation did not give Brown credit for familiarity with materials, keeping current with codes and ordinances, assisting inspectors with research, accurately transcribing technical information, participating in classroom training or performing required assignments. Rather, the June 24th Evaluation indicated that (1) Brown's reports were "very poor;" (2) he required additional supervisory instruction; and (3) he accepted tasks and assignments with resentment. *Id.* The June 24th Evaluation was forwarded to the DOB's Personnel Office, but no further action was taken to terminate plaintiff's employment.

Brown submitted a written statement protesting each of his evaluations to the DOP and the IG. He received no response, however, nor was he provided with a hearing or any other forum in which to challenge the negative work evaluations.

### III. Application for Employment as Inspector (Construction)

On July 8, 1985, Brown was transferred to the DOB's Bronx Borough Office. That month, Brown applied to the DOP for a permanent position as inspector (construction), for which he had taken and passed Civil Service Examination Number 4047 ("Examination No. 4047"). Nevertheless, the DOP marked him "not qualified" for the position. The defendants contend that the DOP marked Brown "not qualified" because he did not meet the experience and education requirements set forth in the Notice of Examination for Examination No. 4047. Brown contends, however, that he satisfied both the education and experience requirements and that he was deemed not qualified because the DOP investigator was influenced by the June 24th Evaluation. Specifically, Brown contends that, prior to 1985, he held a bachelor of science degree in architectural technology from the New York Institute of Technology ("NYIT"), which satisfied the education requirement. In addition, Brown maintains

that he had done substantial work in, among other things, plastering at the Banana Kelly Community Improvement Association ("Banana Kelly"), which satisfied the experience requirement.[6]

## IV. Employment as a Provisional Assistant Architect

Thereafter, on August 23, 1985, Brown resigned from his position at the Bronx DOB office to accept an appointment as a provisional assistant architect in the competitive service with the DOPR, subject to investigation for a permanent position. As part of this investigation, Brown filled out an application and personal history questionnaire, omitting that he had been employed by the Transit Authority and that he had been terminated by Vitullo. Brown's superiors at the DOPR submitted letters of recommendation on his behalf.

By notice dated April 30, 1986, the DOP indicated its determination to disqualify Brown from provisional employment as an assistant architect, effective May 16, 1986. *See* Memorandum from Assistant Personnel Director to Personnel Director of 4/30/86, annexed to the Rosenbaum Dec. as Exh. "L." The defendants contend that the DOP's determination was based on its (1) background investigation, which disclosed plaintiff's conviction record and his prior unsatisfactory private and public employment; and (2) conclusion that plaintiff had falsified or omitted material facts in his employment application. Brown contends, however, that the DOP's reasons for terminating his employment are inaccurate and pretextual. Specifically, Brown contends that he (1) had repeatedly disclosed his conviction record, and had done so on his DOPR application for the assistant architect position; (2) did not exhibit habitually poor work performance in his prior public and private jobs; and (3) neither falsified nor omitted material facts in his employment

application. Rather, according to Brown, the June 24th Evaluation prompted the DOP investigator to conclude that Brown lacked moral character and had a habitually poor work history.

## V. Pleadings

As a result of his termination from the DOPR, on August 12, 1986, Brown filed three essentially identical complaints of discrimination against the DOP, DOB and DOPR respectively, with the New York State Division of Human Rights ("SDHR"). In his complaints, Brown claimed discrimination based on race, sex and his previous arrest record, and also charged the DOP, DOB and DOPR with violating Title VII of the Civil Rights Act of 1964 ("Title VII"). Brown authorized the SDHR to accept the charges on behalf of the Equal Employment Opportunity Commission ("EEOC").

Specifically, Brown alleged that, throughout his employment with the DOB, Van Alphen "indicated a prejudicial attitude towards me as a Black male." *See* SDHR Complaints, annexed to the Rosenbaum Dec. as Exhs. "O," "P," "Q." Brown alleged further that, on January 25, 1985, he was struck by a fellow employee, and that Van Alphen did not take any action with respect to this incident. Finally, Brown alleged that, on May 14, 1986, he received a letter from the DOPR that his employment was terminated "due to my failure to appear and cooperate in the completion of personnel's investigation." *Id.* at ¶ 6. Brown concluded that "I believe the reason(s) given for my termination are pretextual and that I was terminated because of my race/color, sex and previous arrest record in conjunction with a conspiracy conducted by Chief Van Alphen of the Department of Buildings." *Id.* at ¶ 7.

6. There is some dispute over the type of work performed by Brown for Banana Kelly. On July 15, 1985, Ed Colon ("Colon") and Robert Foster ("Foster"), homesteader and team captain of homesteaders respectively, wrote to the DOP confirming that Brown did carpentry and masonry work for Banana Kelly. *See* letter from Colon and Foster to Smith of 7/15/85, annexed to the Cotsirilos Aff. as Exh. "Q." That same day, however, property manager Mildred Velez ("Velez") wrote a letter indicating that Brown was never employed as a homesteader. *See* letter from Velez to Smith of 7/15/85, annexed to the Rosenbaum Dec. as Exh. "X." Rather, Brown contributed 600 hours of volunteer labor as a condition of membership in the Banana Kelly co-op.

On March 16, 1987, Brown withdrew his SDHR complaint and EEOC charge against the DOPR.[7] Thereafter, on October 30, 1987, the SDHR issued orders finding no probable cause to believe that Brown had been discriminated against by either the DOP or the DOB. On July 15 and July 25, 1988, the EEOC adopted the SDHR's determination with respect to the DOP and the DOB and gave Brown ninety days to commence a private action in this Court.

Accordingly, on October 4, 1988, plaintiff commenced this action *pro se,* naming the City and the DOP as defendants. In his *pro se* complaint, Brown alleged that the DOP had discriminated against him on account of his race, age and sex, in violation of Title VII. Brown also appealed his DOPR termination to the Civil Service Commission. In a decision dated March 7, 1990, the Civil Service Commission deemed Brown qualified for the position of provisional assistant architect at the DOPR and ordered Brown reinstated. *See* Decision, dated March 7, 1990, annexed to the Cotsirilos Aff. as Exh. "V," at 4–5. Specifically, the Commission found that Brown's termination from the Transit Authority was a product of his prior conviction, and that the certificate of relief from disabilities granted him a presumption of rehabilitation. The Civil Service Commission found further that Brown's termination from employment with Vitullo "was not the result of either incompetence or misconduct." *Id.* at 4. In addition, the DOPR's documents established that Brown was an "outstanding employee." *Id.* The Commission concluded that "the record before us does not establish that [Brown's] work history is that of an individual who demonstrates habitually poor performance. Accordingly, we conclude that [Brown's] prior public and private employment history was not unsatisfactory." *Id.* at 5.

In a subsequent decision dated November 13, 1990, the Civil Service Commission found that New York Civil Service Law Section 65 barred reinstatement of an employee to a provisional position in the presence of an eligible list. The Commission therefore directed the DOPR to offer Brown the first provisional appointment as assistant architect arising after the date of the Commission's original decision and indicated that Brown was entitled to back pay in the event that another individual was named provisionally to the position ahead of him.

On October 28, 1992, Brown[8] filed an amended complaint against the City, the DOP, the DOB, the DOPR and the Civil Service Commission. For his first cause of action, Brown alleges that the defendants violated Title VII by (1) terminating his employment with the DOPR; (2) treating him in a discriminatory fashion while he was employed by both the DOB and the DOPR; (3) creating a hostile work environment; (4) developing a false negative employment record leading to the City's failure to employ Brown as a permanent employee; and (5) retaliating against Brown after he protested against the defendants' discriminatory conduct. For his second cause of action, Brown alleges that the (1) discriminatory treatment and harassment Brown experienced while he was employed by the City; (2) hostile work environment maintained by the defendants; and (3) retaliatory actions taken against Brown after he had protested against the discriminatory conduct were based on Brown's race in violation of 42 U.S.C. § 1981 ("Section 1981").

Defendants now move for summary judgment on the grounds that (1) Brown's claims against the defendants that arise from events that took place prior to October 16, 1985 are untimely; (2) the Court lacks subject matter jurisdiction over those allegations in the Amended Complaint that were not asserted in Brown's SDHR and EEOC complaints; and (3) defendants' actions constituted legitimate, nondiscriminatory employment prac-

---

**7.** By letter dated June 4, 1987, Brown indicated that he did not intend to withdraw his EEOC complaint against the DOPR and that he wanted the EEOC to investigate this charge. *See* letter from Brown to the EEOC of 6/4/87, annexed to the Cotsirilos Aff. as Exh. "X." However, on August 31, 1987, the EEOC informed Brown that his charge against the DOPR was considered withdrawn. *See* letter from EEOC to Brown of 8/31/87, annexed to the Rosenbaum Dec. as Exh. "W."

**8.** Brown is now represented by the law firm of Cleary, Gottlieb, Steen & Hamilton.

tices and were not a pretext for discrimination.

## DISCUSSION

### I. Statute of Limitations

 Defendants contend that plaintiff's claims against the DOB should be dismissed as they were not filed with the EEOC within the appropriate statute of limitations period.[9] "Title VII requires aggrieved persons to file a complaint with the EEOC 'within one hundred and eighty days after the alleged unlawful employment practice occurred.'" *Delaware State College v. Ricks,* 449 U.S. 250, 256, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980) (quoting 42 U.S.C. § 2000e–5(e)). In states such as New York where an agency addresses charges of discrimination, the statute of limitations for filing a charge with the EEOC is 300 days. 42 U.S.C. § 2000e–5(e). The limitations period commences on the date of the discriminatory act. *Delaware State College v. Ricks,* 449 U.S. at 258, 101 S.Ct. at 504. When a plaintiff fails to file his or her EEOC charge within the specified time period, the claim is time-barred. *Butts v. City of New York Dep't of Hous. Preservation and Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993).

 In the present case, Brown's SDHR and EEOC complaints were filed on August 12, 1986. Thus, pursuant to 42 U.S.C. § 2000e–5(e), any claims of discrimination that occurred prior to October 16, 1985 are time-barred. As Brown left his employment with the DOB in August 1985, any claims against the DOB are thus barred by the 300–day statute of limitations.

Plaintiff contends that he should be permitted to bring his time-barred claims based on the "continuous violation" exception to the Title VII statute of limitations rule. "As a general matter, the mere continuation of a discriminatory act's effects, when the act it-self occurred prior to the pertinent limitations period, is not sufficient to support recovery under Title VII." *Association Against Discrimination In Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 274 (2d Cir.1981), *cert. denied sub nom. Bridgeport Firefighters For Merit Employment, Inc. v. Association Against Discrimination In Employment, Inc.,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982).

> Where, however, the defendant has engaged in a continuous policy of discrimination, acts in furtherance of that policy are not viewed in isolation. In such circumstances if the charge has been filed no later than 300 days after the *last* act by the defendant pursuant to its policy, the plaintiff may recover for earlier acts of discrimination as well.

*Id.* (emphasis in original); *see also Miller v. International Tel. and Tel. Corp.,* 755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985).

 To establish a continuing violation, a plaintiff must present proof of specific ongoing discriminatory policies or practices or establish that "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). Nonetheless, "discrete incidents of discrimination that are not related to discriminatory policies or mechanisms may not amount to a continuing violation." *Id.; see also Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). To benefit from the continuing violation doctrine, a plaintiff must clearly assert the continuing violation both in the EEOC filing and in the complaint. *See Cook v. Pan Am. World Airways, Inc.,* 771 F.2d 635, 646 (2d

---

9. Defendants contend further that plaintiff's claim against the DOP and the City for marking him "not qualified" under Examination No. 4047 is time-barred as it took place prior to October 15, 1985. This claim arises under Section 1981 rather than Title VII. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 185, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989) (stating that an employer's refusal to enter into a new contract is actionable under section 1981). "A section 1981 action is not subject to the Title VII statute of limitations, but rather is subject to the state statute applicable to personal injury claims." *Tadros v. Coleman,* 898 F.2d 10, 12 (2d Cir.), *cert. denied,* 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990). In New York, the applicable statute of limitations is three years. *Id.* As Brown filed his original complaint less than three years from the date of his disqualification, his claim against the DOP is timely.

Cir.1985), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986).

■ While Brown's treatment at the DOB may have constituted a continuing violation,[10] the Court finds that the DOB's discriminatory conduct ceased when Brown left his employment there. As a result, the last act of discrimination took place outside the statute of limitations period. Accordingly, the Court finds that Brown's claims against the DOB are time-barred.

■ With respect to the remaining defendants, however, the Court concludes that, subject to evidentiary rules, the July 24th Evaluation and the allegedly discriminatory animus of Brown's supervisors in drafting it may constitute relevant background evidence in support of plaintiff's timely claims. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (stating that a time-barred discriminatory act may constitute relevant background evidence where the status of a current practice is at issue); *Fuentes v. City of New York Human Resources Admin.,* 830 F.Supp. 786, 787 n. 1 (S.D.N.Y.1993) ("Pre-limitations period events may be considered as evidence so long as the claimed violation took place within the applicable limitations period."); *Ganguly v. New York State Dep't of Mental Hygiene Dunlap Manhattan Psychiatric Ctr.,* 511 F.Supp. 420, 427 (S.D.N.Y.1981) (same). Thus, although the DOB's conduct in creating the July 24th Evaluation is time-barred, the Court finds that it is relevant to a determination of whether the actions of the remaining defendants violated Title VII and Section 1981. *See Malarkey v. Texaco, Inc.,* 559 F.Supp. 117, 121 (S.D.N.Y.1982) (permitting evidence of time-barred conduct to " 'illuminate current practices which, viewed in isolation, may not indicate discriminatory motives.' ") (quoting *Downey v. Southern Natural Gas Co.,* 649 F.2d 302, 305 (5th Cir.1981)), *aff'd,* 704 F.2d 674 (2d Cir.1983); *see also Stoller v. Marsh,* 682 F.2d 971, 978 (D.C.Cir.1982) (finding that, where an employee alleges that he has been denied a promotion because of a discriminatory evaluation, the supervisor's discriminatory animus in creating the evaluation is background information that might make the subsequent failure to promote discriminatory), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983).

## II. Subject Matter Jurisdiction

■ Defendants next contend that Brown's claims against the City, the DOP, the Civil Service Commission and the DOPR must be dismissed because they were not raised in the SDHR and EEOC charges. "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Preservation and Dev.,* 990 F.2d at 1401; *see also Stewart v. United States Immigration and Naturalization Serv.,* 762 F.2d 193, 198 (2d Cir.1985). As the purpose of this rule is to encourage settlement through conciliation, voluntary compliance would be defeated if a plaintiff could litigate a claim not previously presented to and investigated by the EEOC. *Butts v. City of New York Dep't of Hous. Preservation and Dev.,* 990 F.2d at 1401; *see also McNeil v. Aguilos,* 831 F.Supp. 1079, 1083 (S.D.N.Y.1993).

■ The Second Circuit has held that claims not alleged in an EEOC charge are "reasonably related" to the charge, and therefore subject to the Court's jurisdiction, if three requirements are met. *Butts v. City of New York Dep't of Hous. Preservation and Dev.,* 990 F.2d at 1402. Specifically, a claim is considered reasonably related where (1) the conduct complained of falls within the scope of the EEOC investigation of the original charges of discrimination; (2) it alleges retaliation by an employer against an employee for filing an EEOC charge; and (3) a

---

**10.** Although somewhat vague, Brown did allege in his EEOC charge that "the reason(s) given for my termination are pretextual and that I was terminated because of my race/color, sex and previous arrest record in conjunction with a conspiracy conducted by Chief Van Alphen of the Department of Buildings." *See* SDHR Complaint, annexed to the Rosenbaum Dec. as Exh. "P."

plaintiff alleges further incidents of discrimination carried out in precisely the same manner as alleged in the EEOC charge. *Id.* at 1402–03.

### A. The City, The DOP and The Civil Service Commission

■ In his SDHR and EEOC charges, Brown alleges that the DOP and the City violated New York State law by terminating him from provisional employment as an assistant architect, effective May 16, 1986. In addition to this allegation, Brown alleges in his amended complaint that (1) he was marked "not qualified" for the position of inspector (construction) in October 1985;[11] (2) he was not given access to the position of assistant architect when the City established an eligible list for this position beginning in December 1987; and (3) he was marked "not qualified" for a permanent civil service position as an assistant architect on or about April 1990 as a result of the false negative record maintained by the City. *See* the Amended Complaint at ¶¶ 29, 36, 38.

■ Defendants argue that these new allegations should be dismissed as they are neither included in the EEOC charge nor are reasonably related to it. This argument fails, however, as plaintiff's new allegations arise under Section 1981, rather than Title VII.[12] While a claim predicated on Title VII cannot succeed where a plaintiff initially fails to pursue federal administrative relief, Section 1981 "was designed to afford a federal remedy for acts of discrimination separate and distinct from any relief available under Title VII." *Stewart v. Wappingers Cent. Sch. Dist.*, 437 F.Supp. 250, 252 (S.D.N.Y. 1977). Accordingly, Brown was not required to include his Section 1981 claims in his EEOC charges.

**11.** The Amended Complaint also makes this allegation against defendant Civil Service Commission. *See* the Amended Complaint at ¶¶ 29, 30.

**12.** In effect, plaintiff is arguing that the DOP denied him the opportunity to enter into new contracts with the City by relying on the July 24th Evaluation. *See Patterson v. McLean Credit Union*, 491 U.S. at 185, 109 S.Ct. at 2377; *Lewis v. Digital Equip. Corp.*, 92 Civ. 8010, 1993 WL 498047 at *4–5 (S.D.N.Y. Dec. 1, 1993) (refusing

### B. The DOPR

Defendants concede that Brown's claim against the DOPR arising out of Brown's termination from employment as a provisional assistant architect in May 1986 was properly raised in his SDHR/EEOC charge. Defendants contend that the Court does not have jurisdiction over Brown's claim, however, as Brown withdrew his claim against the DOPR on March 16, 1987.[13]

■ Before filing a Title VII action, a plaintiff must first bring his charges before the EEOC and obtain a right to sue letter from the agency. *Koster v. Chase Manhattan Bank*, 554 F.Supp. 285, 287 (S.D.N.Y. 1983). While Brown timely filed his SDHR/EEOC charge against the DOPR, by withdrawing his claim he effectively failed to exhaust his remedies. *See Rivera v. United States Postal Serv.*, 830 F.2d 1037, 1039 (9th Cir.1987) ("To withdraw is to abandon one's claim, to fail to exhaust one's remedies."), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988).

■ Plaintiff contends that Brown later corrected his error in withdrawing his complaint from the EEOC. The Court disagrees. While Brown has submitted to the Court his letter dated June 4, 1987, indicating that he did not wish to withdraw his EEOC charge against the DOPR, the EEOC's August 31, 1987 letter demonstrates that Brown's charge against the DOPR was deemed withdrawn. Indeed, Brown has failed to submit any Notice of Right to Sue authorization which is a prerequisite to a Title VII action. *See Lewis v. New York Tel. Co.*, 643 F.Supp. 654, 658 (S.D.N.Y.1984). Accordingly, as Brown's request to withdraw his EEOC charge against the DOPR, whether mistaken or otherwise, was granted, the Court does not have jurisdiction to hear

to dismiss allegation that plaintiff was prevented from applying for a promotion).

**13.** As a result, on March 18, 1987, the SDHR ordered plaintiff's SDHR complaint against the DOPR withdrawn, and by letter dated August 31, 1987, the EEOC granted plaintiff's request to withdraw his charge of discrimination against the DOPR.

Brown's claim against the DOPR by virtue of that EEOC charge. *See Wright v. United Airlines, Inc.*, 1993 WL 239570, at *2, 1993 U.S.App. LEXIS 16274, at *2 (9th Cir. July 1, 1993) (holding that plaintiff could not litigate in federal court those charges that he voluntarily withdrew from investigation by the EEOC).

An analysis of Brown's remaining EEOC charges, however, leads the Court to conclude that Brown is not procedurally barred from bringing his claim against the DOPR. Although the two EEOC charges fail to name the DOPR as a defendant, the charges clearly implicate the DOPR in the allegedly discriminatory conduct.

As a general rule, a party not named in an EEOC charge may not be named in the subsequent civil suit. *Drummer v. DCI Contracting Corp.*, 772 F.Supp. 821, 828 (S.D.N.Y.1991) (citing *Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494, 497 (S.D.N.Y.1989)). The purpose of the rule is to "notify the charged party of the alleged violation and to bring him before the EEOC, thereby permitting 'effectuation of the Act's primary goal, the securing of voluntary compliance with the law.'" *Koster v. Chase Manhattan Bank*, 554 F.Supp. at 288–89 (quoting *Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711, 719 (7th Cir.1969)). Where there is substantial identity between a party named in an EEOC charge and the defendant, and the defendant sought to be sued had notice of the EEOC proceeding, however, the defendant need not have been named in the EEOC charge to be properly before the Court. *See Women In City Gov't United v. City of New York*, 515 F.Supp. 295, 299 (S.D.N.Y.1981) (quoting *Vulcan Soc'y v. Fire Dep't of White Plains*, 82 F.R.D. 379, 389 (S.D.N.Y.1979)).

In the case at hand, the DOPR had adequate notice of the charges against it by virtue of the SDHR/EEOC charge originally brought against it, as well as the fact that it was named in the allegations of the SDHR/EEOC complaints brought against the DOB, the DOP and the City. In addition, the Court finds that there exists a substantial identity between the defendants named in the SDHR/EEOC charges and the DOPR. *See Davis v. Buffalo Psychiatric Ctr.*, 613

F.Supp. 462, 466 (W.D.N.Y.1985) (finding sufficient identity of interest between a community mental health center and state agencies such that failure to name state agencies in EEOC charge did not bar Title VII action). Accordingly, the Court finds that the claim against the DOPR is not procedurally barred.

### III. Defendants' Motion for Summary Judgment

#### A. Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir. 1994). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

The Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir.1988); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The Court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby*,

*Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), however, and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. United States Fire Ins. Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987).

■■■ To defeat a defendant's properly supported motion for summary judgment in a race discrimination case, a plaintiff must establish a material issue of fact "as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief *and* (2) more likely than not the employee's [race] was the real reason for the discharge." *Woroski v. Nashua Corp.,* 31 F.3d 105, 108–09 (2d Cir.1994) (emphasis in original). Where the material fact at issue is an employer's intent, however, summary judgment should be used sparingly. *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d at 1224; *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). "Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d at 1224.

## B. The *McDonnell Douglas* Standard

■■■ In order to establish a *prima facie* case of discrimination based on race, a plaintiff must satisfy the standard set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ("*McDonnell Douglas* ")[14] Under this standard, the plaintiff must establish that (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) after this rejection, the position was filled by someone outside the protected class or

the employer continued to seek applications for the position. *Id.* at 802, 93 S.Ct. at 1824; *see also Patterson v. McLean Credit Union,* 491 U.S. at 186–87, 109 S.Ct. at 2378, 105 L.Ed.2d 132 (1989). The burden of establishing a *prima facie* case "is not onerous." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 2378, 67 L.Ed.2d 207 (1981).

■■■ Once the plaintiff establishes a *prima facie* case, an inference of employment discrimination arises, *id.* at 254, 101 S.Ct. at 1094, 67 L.Ed.2d 207 (1981); *see also Patterson v. McLean Credit Union,* 491 U.S. at 187, 109 S.Ct. at 2378, and the burden shifts to the defendants to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected for legitimate, nondiscriminatory reasons. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Community Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. In order for defendants to satisfy their burden, it is sufficient if their evidence raises a genuine issue of fact as to whether they discriminated against the plaintiff. *Texas Community Affairs v. Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. "To accomplish this, the defendant[s] must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant[s]." *Id.* at 255, 101 S.Ct. at 1094.

■■■ If defendants are able to rebut the presumption of discrimination, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons set forth by the defendants are merely pretextual and not the true reasons for plaintiff's disqualification and termination. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 804, 93 S.Ct. at 1825; *see also Patterson v. McLean Credit Union,* 491 U.S. at 187, 109 S.Ct. at 2378; *Texas Community Affairs v. Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The mere fact that a defendant proffers a false reason for a challenged employment action, however, does not necessarily estab-

---

**14.** The *McDonnell Douglas* scheme of proof also applies to claims of racial discrimination under

Section 1981. *See Patterson v. McLean Credit Union,* 491 U.S. at 186, 109 S.Ct. at 2378.

lish liability. *DeMarco v. Holy Cross High School,* 4 F.3d 166, 170 (2d Cir.1993). "[T]he Title VII plaintiff at all times bears the 'ultimate burden of persuasion'" that the defendants' actions were motivated by improper discriminatory intent. *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

### 1. Plaintiff's *Prima Facie* Case [15]

The Court finds that plaintiff has satisfied the four-part test for a *prima facie* case as outlined in *McDonnell Douglas.* First, as an African–American, plaintiff is a member of a protected class. Second, with respect to Brown's claim arising out of Examination No. 4047, there is an issue of fact whether Brown satisfied the education and experience requirements, thereby rendering him qualified for the position of inspector (construction). In addition, with respect to Brown's claim arising out of his termination from the position of provisional assistant architect, in its decision dated March 7, 1990, the Civil Service Commission found Brown qualified for the provisional assistant architect position at the DOPR. Accordingly, the Court finds that Brown has satisfied the second requirement for establishing a *prima facie* case.

Third, it is undisputed that Brown was deemed "not qualified" for the position of inspector (construction) and that he was terminated from his position as a provisional assistant architect. Finally, the defendants continued to seek applicants to fill the positions of inspector (construction) and provisional assistant architect after Brown was disqualified from these positions. The fact that provisional appointments were eventually eliminated by the creation of an eligible list "is of little relevance and should not sound a death knell" to Brown's claim against the DOPR. *Meiri v. Dacon,* 759 F.2d 989, 996 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Ac-

cordingly, the Court finds that plaintiff has established a *prima facie* case of discrimination.

### 2. Defendants' Legitimate, Nondiscriminatory Reasons

Under the *McDonnell Douglas* analysis, once the plaintiff establishes a *prima facie* case of employment discrimination, the burden then falls on the defendants to produce evidence that the plaintiff was disqualified for a legitimate, nondiscriminatory reason. *Id.; see also McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Community Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

### a. Disqualification From Position as Inspector (Construction)

By notice dated October 9, 1985, the DOP deemed Brown "not qualified" for the position of inspector (construction) under Examination No. 4047. According to the defendants, the DOP made this determination on the grounds that plaintiff did not meet the experience and education requirements of the position as set forth in the Notice of Examination for Examination No. 4047.

Specifically, defendants claim that Brown failed to satisfy the requirement that he have a minimum of three years of full-time experience working at a construction trade and a minimum of two years of formal training or education in an acceptable construction program with an emphasis on construction in a college, technical school or trade school. According to defendants, Brown had only one year and five months of qualifying experience and they could not verify his bachelor of science degree from NYIT. Based on this evidence, the Court concludes that defendants have set forth a legitimate, nondiscriminatory reason for Brown's disqualification.

---

15. The Amended Complaint attempts to state a claim for retaliation, alleging merely that "the retaliatory acts taken against Plaintiff by Defendants after he protested against Defendants' discriminatory conduct were based on Plaintiff's race in violation of Title VII." *See* Amended Complaint at ¶ 42. As plaintiff's allegations do

not demonstrate that a retaliatory motive played any part in an adverse employment action, the Court finds that Brown has a failed to establish a *prima facie* case of retaliation. *See McGuire v. United States Postal Serv.,* 749 F.Supp. 1275, 1282 (S.D.N.Y.1990) (setting forth standard for establishing a Title VII retaliation claim).

### b. Termination From Position as Provisional Assistant Architect

■ By notice dated April 30, 1986, the DOP indicated its determination to disqualify Brown from provisional employment as an assistant architect, effective May 16, 1986. The defendants contend that the DOP's determination was based on (1) Brown's prior conviction; (2) his previous unsatisfactory private and public employment, including but not limited to the June 24th Evaluation; and (3) its conclusion that plaintiff had falsified or omitted material facts in his employment application.

With respect to the June 24th Evaluation, defendants contend that the DOP's reliance on it was made in good faith and that there is no evidence that the DOP knew that the DOB's report was false. Thus, according to defendants, even if Brown's DOB supervisors were motivated by racial animus in creating the negative Evaluation, the DOP did not have a discriminatory motive in disqualifying Brown from provisional employment. The Court finds this argument unpersuasive.

■ "Title VII is violated when an employing organization uses discriminatory evaluations of an employee which were prepared by its own supervisory personnel, unless its procedures have given the employee a reasonable opportunity to inspect and correct these evaluations." *Stoller v. Marsh,* 682 F.2d at 976 *("Stoller").* In the present case, the Court finds that an issue of fact exists as to whether (1) Brown's DOB supervisors drafted the June 24th Evaluation out of racial animus;[16] and (2) Brown had the opportunity to examine and correct his file prior to his termination from provisional appointment.[17] Assuming the June 24th Evaluation was false and Brown was not given an opportunity to examine and correct his file prior to his termination, however, the Court finds that, under the reasoning in *Stoller,* the DOP's reliance on the June 24th Evaluation is not a legitimate, nondiscriminatory reason protecting it from Title VII liability.

■ Defendants attempt to distinguish *Stoller* on the grounds that, unlike the present case, *Stoller* involved the same employing organization in all of the discriminatory acts. Contrary to defendants' characterization, however, the Court finds that, as the DOB, the DOP and the DOPR are all departments of the City of New York, defendants in fact constitute the same employing organization. The DOP is the centralized department of personnel management charged with investigating applicants for positions in the civil service, reviewing their qualifications and revoking or rescinding any certification or appointment by reason of the disqualification of the applicant under the provisions of the civil service law. *See* New York, N.Y., Admin.Code and Charter § 813(6) (1994). In addition, the DOP is directed to keep records regarding candidates for appointment to the civil service. *Id.,* § 813(9). Thus, as the DOP is charged with maintaining records on employees of the DOB and the DOPR, the Court concludes that the reasoning in *Stoller* applies equally well to the case at bar. Accordingly, the fact that the DOP and the DOPR are separate departments from the DOB does not shield defendants from liability under Title VII.

Defendants contend further that the June 24th Evaluation was not the sole reason for its decision to terminate Brown. In fact, in response to the DOP's letter of inquiry, Vitullo, Brown's previous employer, indicated that Brown had been terminated because "he would not take direction from my head draftsman, who was younger than him. I received complaints from the other employees concerning his attitude toward them. I fired him to keep peace in the office." Letter from Vitullo to the DOP of 7/2/85, an-

---

16. While the June 24th Evaluation may have been based on Brown's performance at the B.E.S.T. Squad, it is noteworthy that the June 12th Evaluation, drafted just twelve days prior to the June 24th Evaluation, gave Brown credit for certain activities and recommended transferring Brown to another department rather than terminating him.

17. While defendants argue that Brown received a copy of the June 24th Evaluation, Brown contends that his request for a copy was denied. In addition, while Brown submitted two written protests, he was not provided with a hearing or any other forum in which to challenge the June 24th Evaluation.

nexed to the Rosenbaum Dec. as Exh. "J." The DOP investigation also revealed that he was terminated from his position as a Transit Authority railroad clerk. Brown had failed to list his dismissals from either Vitullo or the Transit Authority on his employment application.[18] Plaintiff also responded "No" to the question "[w]ere you ever discharged or asked to resign from any employment." *See* Personal History Questionnaire, annexed to the Rosenbaum Dec. as Exh. "N."

The Court finds that this evidence gives rise to a legitimate, nondiscriminatory reason for terminating Brown. Thus, even if the June 24th Evaluation was false and Brown was not given an opportunity to correct it, the DOP's proffered basis for terminating Brown rebuts the presumption of discrimination.

### 3. Brown's Pretextual Evidence

Once the defendants produce a legitimate, nondiscriminatory reason for their actions, the burden of proof shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered reasons are merely pretextual and that he has been victim of intentional discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. at 256, 93 S.Ct. at 1590; *see also St. Mary's Honor Ctr. v. Hicks,* —— U.S. at ——–——, 113 S.Ct. at 2747–48. The Court finds that Brown has presented evidence from which a reasonable jury could conclude that the defendants' stated reasons for disqualifying him from employment as an inspector (construction) and terminating him from employment as a provisional assistant architect are pretextual.

#### a. Disqualification from Position as Inspector (Construction)

■ Brown argues that defendants' proffered reasons for disqualifying him from employment as an inspector (construction), namely that he did not meet the education and experience requirements for the position, are pretextual. Rather, he contends that the investigator was unduly influenced by the June 24th Evaluation.

Specifically, Brown contends that his bachelor of science degree from NYIT and his prior experience working for the Banana Kelly organization satisfied the requirements for the position of inspector (construction). While defendants claim that the DOP investigator was unable to verify Brown's bachelor of science degree, Brown contends that defendant's argument is disingenuous in light of his attempts to notify the DOP about his degree. With respect to the experience requirement, Brown argues that the DOP gave no credence to the letter from Foster and Colon confirming that he had done plastering and other work at Banana Kelly since 1981.

In light of these contentions, the Court finds that an issue of fact exists as to whether the DOP's proffered reasons for disqualifying Brown from employment as an inspector (construction) are pretextual. As a reasonable jury could conclude that the DOP investigator relied on the June 24th Evaluation in determining that Brown lacked moral character, defendants' motion for summary judgment is denied.

#### b. Termination from Position as Provisional Assistant Architect

■ Brown next contends that the defendants' stated reasons for the decision to terminate him from employment as a provisional assistant architect are pretextual. In support of this contention, plaintiff relies on the March 7, 1990 Civil Service Commission decision deeming Brown qualified for the position of provisional assistant architect at the DOPR and ordering Brown reinstated.

Specifically, the Civil Service Commission found that Brown's termination from the Transit Authority was a product of his prior conviction and that the certificate of relief from disabilities granted him a presumption of rehabilitation. The Civil Service Commission found further that Brown's termination from employment with Vitullo "was not the result of either incompetence or misconduct." *See* Decision, dated March 7, 1990, annexed to the Cotsirilos Aff. as Exh. "V," at 4. The Commission concluded that "the record be-

----

18. Brown omitted listing his employment with the Transit Authority on his application

altogether.

fore us does not establish that [Brown's] work history is that of an individual who demonstrates habitually poor performance. Accordingly, we conclude that [Brown's] prior public and private employment history was not unsatisfactory." *Id.* at 5.

The Court finds that the Civil Service Commission's decision creates an issue of fact as to whether the DOP's reasons for terminating Brown are pretextual. Specifically, the Court concludes that a reasonable jury could find that the DOP unduly relied on the June 24th Evaluation without providing him with an opportunity to examine his file and correct it. Accordingly, defendant's motion for summary judgment is denied.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment with respect to Brown's claims against the DOB and his claim for retaliation against all of the defendants is granted. Defendants' motion for summary judgment with respect to the remaining defendants is denied. The parties are directed to complete any remaining discovery and to appear for a pretrial conference on Wednesday, November 23, 1994, at 10:30 a.m.

SO ORDERED.